<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal Action No. 20-555 (SDW) |
| v. | **WHEREAS OPINION** |
| THOMAS MANZO, | |
| Defendant. | February 22, 2024 |

**WIGENTON**, District Judge.

**THIS MATTER** having come before this Court upon Defendant Thomas Manzo's ("Manzo") motion to dismiss (D.E. 91 ("Motion")) the Indictment (D.E. 1 ("Indictment")) for violation of the Speedy Trial Act ("STA"), 18 U.S.C. § 3161 *et seq.*, and this Court having reviewed the parties' submissions; and

**WHEREAS** "to assure a speedy trial," 18 U.S.C. § 3161(a), the STA sets certain "timing deadlines for the stages of a criminal prosecution." *United States v. Scarfo*, 41 F.4th 136, 176 (3d Cir. 2022). One such deadline requires that a trial commence "within seventy days of the later of [the defendant's] indictment or initial appearance." *Id.* (quoting 18 U.S.C. § 3161(c)(1)). Failure to meet this 70-day deadline will result in dismissal of the case "on motion of the defendant." 18 U.S.C. § 3162(a)(2). "Certain periods of delay are excluded from the calculation of the seventy-day time limit, including '[a]ny period of delay resulting from a continuance . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *United States v. Brooks*, 697 F.2d 517, 520 (3d Cir. 1982) (alterations in original) (quoting 18 U.S.C. § 3161(h)).

1

An ends of justice continuance, however, "cannot be entered *nunc pro tunc*." *United States v. Brenna*, 878 F.2d 117, 122 (3d Cir. 1989). Put differently, "[t]he order continuing the case must be entered *before* the days to be excluded." *Id.*; and

**WHEREAS** on June 26, 2020, a grand jury sitting in Newark indicted Manzo and a co-defendant. (D.E. 1.) The Indictment charged Manzo with (1) committing a violent crime in aid of racketeering activity under 18 U.S.C. § 1959(b)(2) (Count One); (2) conspiring to commit an assault with a dangerous weapon and an assault resulting in serious bodily injury under 18 U.S.C. § 1959(a)(6) (Count Two); and falsifying and concealing records related to a federal investigation under 18 U.S.C. §§ 1519 and 2 (Count Four). (*See generally id.*) Manzo had his initial appearance before Magistrate Judge Cathy Waldor on June 30, 2020, at which time bail was set and the STA clock began to run. (D.E. 8–10.) From that date to December 8, 2022, there were several continuances entered which effectively paused the STA clock.[1] (D.E. 11, 19, 21–22, 24, 39, 48, 50, 61, 66, 67, 69, 71.) From December 9, 2022, through August 17, 2023[2], however, no continuance was in place, and accordingly, the STA clock was violated.[3] On August 17, 2023, the parties agreed to, and former District Judge Kevin McNulty granted, a *nunc pro tunc* continuance, purportedly excluding from the STA calculation the time that had lapsed after December 8, 2022. (D.E. 80.) That order also granted a continuance through November 17, 2023. (*Id.*) On October 31, 2023, this case was reassigned to this Court. (D.E. 84.) And, on November 17, 2023, the latest

---

[1] Continuances were not in effect for the entire time period. To be sure, there were several periods of delays that were not excluded by way of an ends of justice continuance. (*See, e.g.*, D.E. 50, 61.) By December 8, 2022, the STA clock reached approximately 69 days.

[2] Notably, on April 19, 2023, the Government contacted defense counsel to inform him that the STA may have been violated. (D.E. 92-1.)

[3] Manzo contends that 409 days have expired under the STA, while "[t]he Government concedes at least 319 days have elapsed beyond the 70-day requirement of the STA." (D.E. 91 at 7; D.E. 92 at 11.) In any event, the parties agree that the STA was violated.

continuance was entered, excluding from the STA calculation the days from November 17, 2023, until February 16, 2024.  (D.E. 85.)  Trial is set to begin on April 16, 2024.  (D.E. 89); and

**WHEREAS** the parties agree that the STA was violated and that that violation warrants dismissal of the Indictment.  (*See* D.E. 91–93.)  The only dispute before this Court, then, is whether the dismissal should be with or without prejudice; and

**WHEREAS** to determine whether dismissal should be with or without prejudice, the STA directs the district court to "consider, among others, each of the following factors:  [1] the seriousness of the offense; [2] the facts and circumstances of the case which led to the dismissal; and [3] the impact of a reprosecution on the administration of this chapter and the administration of justice."  18 U.S.C. § 3162(a)(2).  When making this determination, "a district court must carefully consider those factors as applied to the particular case and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review."  *United States v. Taylor*, 487 U.S. 326, 336 (1988); and

**WHEREAS** each of the three factors supports dismissal without prejudice.  First, the charged offenses are unquestionably serious.  Manzo, a restauranteur and owner of a wedding venue, allegedly solicited John Perna, a member of the Lucchese Crime Family, for an illicit *quid pro quo*:  Perna was to use his connections to the Lucchese Crime Family to arrange for, and commit, an assault on the boyfriend of Manzo's ex-wife, and in return, Manzo would allow Perna to use the wedding venue at a steep discount.  (*See generally* D.E. 1.)  Perna followed through with this promise; together with an accomplice, he tracked down the victim and used a weapon (a "slapjack") to inflict a permanent injury on the victim's face.  (*Id.*)  Manzo, too, upheld his end of the bargain by providing the wedding venue at a steep discount.[4]  (D.E. 1.)  Thereafter, Manzo

---

[4] Perna was convicted of committing the assault on the victim and was sentenced to 30 months' imprisonment.  (D.E. 53.)

3

attempted to cover up his involvement. (*Id.*) For these actions, Manzo was charged by a grand jury with crimes that carry substantial prison sentences in the event of conviction, (*id.*); indeed, there is a statutory maximum sentence of 20 years for Counts One, 18 U.S.C. §§ 1959(a)(3) and 2, and Four of the Indictment, 18 U.S.C. §§ 1519 and 2. In light of the seriousness of the alleged acts—arranging for a criminal organization to commit bodily harm against someone and, subsequently, impeding the federal investigation—together with the substantial sentences to which Manzo is exposed, this Court finds that the first factor weighs in favor of dismissal without prejudice. *See Munez v. United States*, 462 F. App'x 172, 175 (3d Cir. 2011) ("Sentencing ranges are one indication of a crime's seriousness . . . ."); and

**WHEREAS** second, the record before this Court does not indicate that the Government engaged in intentional dilatory conduct; rather, it suggests that Defendant is, to some extent, at fault for the delay. "This factor requires courts to consider the reasons for the delay: did it stem from 'intentional dilatory conduct' or a 'pattern of neglect on the part of the Government,' or rather, from a relatively benign hitch in the prosecutorial process?" *United States v. Stevenson*, 832 F.3d 412, 420 (3d Cir. 2016) (quoting *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005)). In conducting this inquiry, the district court should weigh "the conduct of both the prosecution and the defendant." *Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 529 (1972)). Unintentional delay, standing alone, is generally insufficient to justify dismissal with prejudice. *See Stevenson*, 832 F.3d at 422 ("Because its conduct was unintentional, 'penalizing the government for the delay [would not appreciably] deter any similar behavior in the future.'" (quoting *United States v. Abdush-Shakur*, 465 F.3d 458, 463 (10th Cir. 2006)). Here, the facts and circumstances suggest that the delays were not only inadvertent, but also welcomed by Manzo. Since the grand jury indicted Manzo in 2020, there have been over a

4

dozen orders to continue this action. The reasons for those continuances were manifold: the COVID-19 pandemic; the complexity of the case; discovery-related issues; Defendant's retention, and subsequent termination, of multiple defense counsel; and Defendant's requests to delay this case so that he could first resolve his criminal case in state court. None of those actions suggest bad faith or a pattern of neglect by the Government. Nor does Defendant point to any. Instead, Defendant's sole—and conclusory—argument is that the delay was substantial and, thus, inherently prejudicial. This Court is not persuaded. As an initial matter, while the delay was certainly substantial, Defendant expressly requested it; he asked the Government to hold off on prosecuting this action until he resolved his criminal case in state court.[5] Perhaps more troublingly, Defendant was affirmatively informed by the Government of the potential STA violation *nine months* before he filed the instant motion. (D.E. 92-1.) Instead of filing the instant motion then, Defendant and the Government agreed to seek an order to exclude time *nunc pro tunc* from December 8, 2022, through November 17, 2023. (D.E. 80.) Of course, the parties now agree that that order was invalid to retroactively stop the STA clock, and thus, there was an STA violation. Importantly, however, that violation was due, at least in part, to Defendant's own conduct. Consequently, the second factor weighs in favor of dismissal without prejudice; and

**WHEREAS** third, reprosecution of Defendant would not offend the administration of justice because there was no prejudice to Defendant. "The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must

---

[5] The nine-count indictment in state court charges Manzo with fourth-degree stalking (Counts 1 and 2), first-degree armed robbery (Count 3), second-degree burglary (Count 4), second-degree aggravated assault (Count 5), third-degree aggravated assault with a deadly weapon (Count 6), third-degree possession of a weapon for an unlawful purpose (Count 7), third-degree theft of movable property (Count 8), and third-degree criminal restraint (Count 9). (*See generally* D.E. 92-3.) Much like the instant case, the charges in state court arise out of Manzo's alleged attempts to harm his ex-wife, her partner, or both. (*Id.*)

be deterred to ensure compliance with the Act." *Stevenson*, 832 F.3d at 423.  This determination is made on a "case-by-case basis." *Taylor*, 487 U.S. at 341 n.13.  Defendant points to no prejudice other than the delay itself.  As explained, Defendant, in part, sanctioned that delay, and he cannot now benefit from a dismissal with prejudice; therefore

Defendant's Motion to Dismiss the Indictment is **GRANTED**, and the Indictment is **DISMISSED WITHOUT PREJUDICE**.[6]  An appropriate order follows.

                                                         /s/ Susan D. Wigenton
                                                    **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties

---

[6] "Dismissal without prejudice is not a toothless sanction:  it forces the Government to obtain a new indictment if it decides to reprosecute, and it exposes the prosecution to dismissal on statute of limitations grounds." *Taylor*, 487 U.S. at 342.  "There are cases in which the [STA] violation is so substantial, the motive so inappropriate, or the resultant prejudice so great that it would be an abuse of discretion for a district court to fail to dismiss an indictment with prejudice." *Stevenson*, 832 F.3d at 423.  Here, as in *Stevenson*, "[t]his case is not one of them." *Id.*